No. 34,380

Marie Darby and Myrl Kliesen, *Appellants*, v. George B. Hart
et al., *Appellees*.

(96 P. 2d 653)

filed December 9, 1939. Opinion

*Carl Van Riper*, of Dodge City, and *Paul R. Nagle*, of St. John, for the
appellants.

*William Davison, Evart Garvin* and *Morris Garvin*, all of St. John, for the
appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to contest a will. For grounds
of contest it was alleged in the petition: (1) that the testatrix
lacked testamentary capacity, (2) that the will was procured by
undue influence, and (3) that the will was written or prepared by
one who was the principal beneficiary and at a time when he was
the agent of and occupied a position of confidence and trust to the
testatrix, and that she had no independent advice with respect to
her will. The trial court found all issues against the plaintiffs. The
appeal was from the judgment generally, but in this court appel-
lants concede there was conflicting evidence as to testamentary
capacity and undue influence, and no contention is here made on
those grounds. They do contend there was no dispute in the evi-
dence as to the facts with relation to the third ground and that the
trial court erred in not setting aside the will on that ground.

The trial court made findings of fact covering all issues. We
summarize and quote therefrom to the extent necessary to discuss
appellants' specifications of error.

The testatrix, Melvina J. Hart, was the mother of the deceased
father of the appellants, and the mother of the appellee, George B.

Hart. Prior to the making of the will and until the death of the testatrix, he was his mother's confidential agent and occupied a position of trust and confidence to her. At the time of making her will she was eighty years of age and in very poor health. About May 19, 1934, George B. Hart went to the office of Robert Garvin, a lawyer of St. John, Kan., and gave him information about the provisions of a will for Melvina J. Hart. Mr. Garvin prepared a will therefrom, and—

"That thereafter, and on or about the 23d day of August, 1934, George B. Hart took his mother to Macksville, Kan., and at said time and place, Mrs. Hart consulted with Harve Breneman, one of her bankers, relative to said will. After Mr. Breneman explained the provisions of this will, paragraph by paragraph, Mrs. Hart informed Mr. Breneman that she was not satisfied with one paragraph of said will which pertained to the manner of disposing of any oil or gas that might be produced from the land she then owned. She then informed Mr. Breneman of the change she decided with reference to said paragraph, and Mr. Breneman took the original draft of the will to the office of Mr. Robert Garvin, who redrew the will. That on the 24th day of August, 1934, the defendant, George B. Hart, again took his mother to Macksville in an automobile. They stopped in front of the bank, and George B. Hart went into the bank and informed Mr. Breneman that his mother was out in the car and wished to talk to him about the will. That Mr. Breneman read and explained to Mrs. Hart the changed paragraph, and that she said to him at that time that she was satisfied with the will. That Breneman called Jay Smith, president of the Farmers and Merchants Bank of Macksville, Kan., to the car, and that Mrs. Hart then and there signed, declared and executed said will, and Mr. Breneman and Mr. Smith subscribed their names as witnesses to the execution of said will.

"The evidence further shows that the defendant George B. Hart was the principal beneficiary under the terms of said will, but the evidence further proves that at the time the said Melvina J. Hart executed her will, she knew the contents of such will, and had independent advice with reference thereto. . . . The evidence fails to establish that George B. Hart used undue influence or in any way dominated the said Melvina J. Hart in the execution of said will.

"That said will was duly admitted to probate, in the probate court of Stafford county, Kansas, on the 21st day of June, 1937."

The trial court concluded as a matter of law that the will executed on August 24, 1934, was the legal and valid will of Melvina J. Hart, and entered judgment accordingly. Appellants' motions for a new trial and for additional findings of fact were denied, and this appeal followed.

Without quoting either will, it may be said that under the first one drafted the testatrix gave her son, George B. Hart, a life estate

in all her property and empowered him to execute new mortgages to cover any liens against her real estate existing at the date of her death. He was also given the right to execute oil, gas and mineral leases on real estate of which she died possessed. He was to receive rentals and royalties to the time of his death. After his death, the residue was bequeathed and devised to the children of her deceased son, Richard Frank Hart (appellants herein), and of her son, George B. Hart, share and share alike. The change made in the second draft, and which was duly executed by Melvina J. Hart, was to provide generally that George B. Hart should have the right to execute oil, gas and mineral leases on lands owned by the decedent, and any rentals and bonuses should be paid to him during his lifetime only. If there was production, no part should be paid to him, but should be paid to the remaindermen "even before the death of the said George B. Hart."

Appellants direct our attention to the latter part of G. S. 1935, 22-214, reading as follows:

. . . "In all actions to contest a will, if it shall appear that such will was written or prepared by the sole or principal beneficiary in such will, who, at the time of writing or preparing the same, was the confidential agent or legal adviser of the testator, or who occupied at the time any other position of confidence or trust to such testator, such will shall not be held to be valid unless it shall be affirmatively shown that the testator had read or knew the contents of such will, and had independent advice with reference thereto."

They argue that under that statute appellee, George B. Hart, failed to sustain the burden of proving that Melvina J. Hart had independent advice with respect to her will prior to its execution. In support of their contentions, appellants rely almost wholly on *Flintjer v. Rehm*, 120 Kan. 13, 241 Pac. 1087, wherein it was held:

"When a will is prepared by the sole or principal beneficiary, who was the confidential agent, or who occupied a position of confidence or trust to the testator, the instrument will not be held valid as a will unless it be affirmatively shown (a) that the testator read or knew its contents, and (b) had independent advice with reference thereto.

"The term 'independent advice,' as used in R. S. 22-214, means that the testator had the preliminary benefit of conferring fully and privately upon the subject of his intended will with a person who was not only competent to inform him correctly as to its effect, but who was so disassociated from the interest of the beneficiary named therein as to be in a position to advise with the testator impartially and confidentially as to the consequences to those naturally entitled to the testator's bounty." (Syl. ¶¶ 1, 2.)

As will be observed from the findings quoted above, the trial court

found generally that Melvina J. Hart knew the contents of her will and had independent advice with reference thereto. Appellants do not now contend she did not know the contents of her will, but only that appellee, George B. Hart, failed to show she had independent advice, as that term was defined in the above case. Therefore, we shall examine the record to determine whether the trial court's finding has support in the evidence.

As a preliminary, it may be noted the trial court found that George B. Hart went to the law office of Robert Garvin and gave him information about the provisions of the will. The finding is not specific as to whether he gave the information orally or in writing, whether he purported to outline his mother's wishes, nor to what extent the information went. These matters may have been fully disclosed at the trial, but the abstracts are entirely silent thereon. It is shown that Mrs. Hart mentioned the matter of her will to a number of persons—among others, one Wiles, an officer of the bank where she transacted her business. In her conversations with him her son was not present. She told him she was giving consideration to making her will, but had not made up her mind how she wanted to do it; she asked him whether she could give her executor power to bind her estate on oil leases and mortgage renewals, and he advised her she could do so. After the first draft was prepared she had her son take her to the residence of Mr. Breneman, one of her bankers. The findings of fact as made by the trial court clearly disclose what transpired then and thereafter and need not be repeated. The findings are fully supported in the evidence. The evidence goes further, however, and shows that Mr. Breneman had had experience with making wills and had assisted in preparing wills. Mr. Garvin stated very specifically that he drafted the second will from information given him by Mr. Breneman; that George B. Hart was not present and that George B. Hart had never given him any information as to the second draft. The evidence further discloses that after the second draft was executed by the testatrix and duly witnessed she told Mr. Breneman to keep the will in the bank, and he took it, sealed it up and put it away. The facts in the case before us are materially different from those in *Flintjer v. Rehm,* supra, as a reading of the opinion in that case will disclose. While it is true in this case that the trial court found that George B. Hart gave information about his mother's will to Mr. Garvin just before the first draft of a will was prepared, there is no specific

finding that the resultant draft was written or prepared or in any manner dictated or controlled by George B. Hart. That draft was never executed. Outside of evidence that George B. Hart took his mother from her home to her bankers, there is no evidence that he did anything to induce her to make her will one way or another. Both of the times she talked to Mr. Breneman, George B. Hart was not present, and so far as the record as abstracted discloses, he did not know what changes she caused to be made in the original draft as embodied in the second draft which she executed. But assuming that he had prepared or written the will, or had caused it to be so prepared and written, the evidence discloses that she had independent advice. Appellants argue that there was no showing that Mr. Breneman was competent to give advice. While it was not very complete, there was a showing that he had had experience in making and preparing wills, and that he had been an employee of the bank for twenty-three years. The statute contemplates more than mere legal advice, and it is not to be interpreted that the independent advice must be given by one admitted to the bar or by one shown to be well versed in all the intricacies of the subject of wills. Although possibly negative in nature, the evidence also warranted the conclusion that Mr. Breneman was so dissociated from the interest of the beneficiary that he was in a position to give the testatrix impartial and confidential advice as to the consequences of her proposed will on those naturally entitled to her bounty. The will is not complicated, it is not unnatural in its terms, it does not provide for a disposition of property such as would challenge attention as being manifestly unfair.

The trial court had before it not only the witness and his competency, but also the will under attack. Its finding the testatrix had independent advice with reference to her will finds support in the evidence, and its judgment is affirmed.